STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**April 19, 2019**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **R.M.-1, R.M.-2, W.M., S.M., C.M., M.M.-1, M.M.-2, E.M. and J.M.**

**No. 18-0962** (Lewis County 17-JA-1, 17-JA-2, 17-JA-3, 17-JA-4, 17-JA-5, 17-JA-6, 17-JA-7, 17-JA-8, and 17-JA-32)

## MEMORANDUM DECISION

Petitioner Mother M.M.-3, by counsel Melissa T. Roman, appeals the Circuit Court of Lewis County's October 2, 2018, order terminating her parental rights to R.M.-1, R.M.-2, W.M., S.M., C.M., M.M.-1, M.M.-2, E.M., and J.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Hunter D. Simmons, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 7, 2017, the DHHR filed an abuse and neglect petition against petitioner and the children's father alleging that the father struck W.M., causing bruising and welts to the child's face, arms, and torso and alleged that petitioner failed to protect the child. The DHHR also alleged that the family had a history of unstable housing. After multiple continuances, the circuit court held an adjudicatory hearing in June of 2017 during which petitioner stipulated to the allegations of abuse and neglect. Following the adjudicatory hearing, the parents were

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials and two other children and the mother share the same initials, they will be referred to as R.M.-1, R.M.-2, M.M.-1, M.M.-2, and M.M.-3, respectively, throughout this memorandum decision.

1

provided with adult life skills services to assist them with budgeting concerns. They also received food vouchers, and received case management and adult life skills through another service provider to assist with paying bills and obtaining employment. In December of 2017, petitioner's ninth child, J.M. was born; however, petitioner failed to notify the DHHR of his birth. Petitioner later admitted that she lied to hospital staff by stating that she had custody of her other children. The DHHR subsequently filed an amended abuse and neglect petition regarding J.M., and petitioner later stipulated to abusing that child.

During a hearing in March of 2018, petitioner testified that her bills and rent were "paid and caught up." However, in May of 2018, petitioner and the father were advised by correspondence from their landlords that, due to their failure to pay rent, they were required to vacate the residence by June 25, 2018. Also in May of 2018, petitioner was granted a three-month post-adjudicatory improvement period. The DHHR was ordered to continue to provide services to petitioner and create a plan to transition the children back to the parents. The circuit court ordered that the DHHR arrange sign language classes for the family.[2] During the May of 2018 review hearing, the circuit court found that the "case is being properly managed" by the DHHR and that the DHHR was "making reasonable efforts to achieve permanency for the minor children."

In June of 2018, the circuit court held a review hearing during which evidence was presented that the parents were being evicted from their home due to their failure to pay rent. However, petitioner made representations during this hearing that arrangements were being made to prevent eviction. According to the DHHR, petitioner also advised the multidisciplinary treatment team ("MDT") that she had made arrangements to remain in the home. The transition plan was ordered to continue as previously ordered. Additionally, the circuit court ordered that the parents "report any changes in housing, first to their respective counsel and secondly to the [DHHR]." The circuit court found that the sign language classes arranged by the DHHR were appropriate and that the DHHR was not required to look for another course.

In July of 2018, the DHHR discovered that petitioner was homeless and lied to the circuit court regarding her housing status. On July 6, 2018, the DHHR filed a motion to suspend the transition of the children to petitioner due to her homelessness. The father was living with his brother in a home that could not accommodate the nine children. The DHHR and the guardian also filed a motion to terminate petitioner's improvement period as well as her parental rights. According to this motion, the parents previously requested individualized therapy and family therapy. The DHHR scheduled the intake for June 22, 2018, and the parents attended. The parents "refused to make a second appointment for family therapy at the end of the first session" and stated that they would call to schedule the next session. However, according to the DHHR, as of July 12, 2018, the parents had not scheduled any other sessions. Subsequently, the circuit court heard evidence in July of 2018 regarding petitioner's eviction and granted the DHHR's motion to suspend the transition of the children to petitioner.

The circuit court held multiple dispositional hearings in July and August of 2018. Despite the DHHR's allegations that petitioner failed to participate in the sign language classes that were

---

[2]The father is deaf, and some of the children have hearing impairments.

provided in June and July of 2018, a service provider testified that she attended the second sign language class and observed petitioner participating in the class. Next, a therapist testified that she had concerns with the safety of some of the children when they were running in the parking lot immediately following a therapy session and that petitioner did not schedule a second therapy session for several weeks. The therapist also testified that she requested information about the family from the DHHR, but was never provided the information requested. Another therapist testified that she did not have safety concerns for the children, and the circuit court later found that there was no safety risk for the children after the therapy sessions.

The parents testified that the father collected $750 per month in disability and that petitioner was employed and made $9.75 per hour. The DHHR presented evidence that the parents received a $4,000 tax refund but failed to use that money to pay their rent. The parents' landlords testified that the parents failed to pay their rent at least nine out of the seventeen months that the abuse and neglect proceedings were pending. According to the landlords, the parents owed at least $2,000 in overdue rent. The circuit court subsequently found that based upon their dishonesty regarding their eviction, the DHHR was unaware that the parents needed assistance with their rent. The circuit court noted that the parents had "funds available that could have been used to pay their rent but failed to appropriately utilize that income" and that "it is unclear to this [c]ourt what [the parents] are spending their money on."

The circuit court found that petitioner was untruthful with the MDT and the circuit court by telling them that she made arrangements to stay in her residence; that the parents were "repeatedly and intentionally dishonest with the [c]ourt and . . . provided false information to the [c]ourt and the MDT"; and that the parents were "repeatedly and intentionally dishonest with [service providers] and that said dishonesty . . . resulted in making therapy services ineffective." The circuit court further found that the parents failed to successfully complete their post-adjudicatory improvement periods and failed to maintain suitable housing for the nine children. The circuit court noted that the parents failed to take responsibility for the injuries to W.M., and that failure prevented them from "making actual improvement in the conditions that led to the filing of the abuse and neglect [p]etitions." Specifically, the circuit court found that it was "utterly astonished that seventeen months after this case began and over a year after . . . [the p]arents made admissions to the [c]ourt that . . . [the p]arents are being untruthful about how their child W.M. was injured." The circuit court noted that petitioner testified inconsistently at least four different times regarding the incident, claiming that it was an accident. The circuit court denied petitioner's motion for an extension of her post-adjudicatory improvement period. Furthermore, the circuit court found no reasonable likelihood that the parents could substantially correct the conditions of abuse and neglect in the near future and that the termination of their parental rights was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its October 2, 2018, dispositional order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

---

[3]The father's parental rights were also terminated. According to respondents, the permanency plan for the children is adoption into their respective foster placements.

3

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. In support, petitioner first argues that the DHHR "intentionally withheld services ordered by the court." She also asserts that the DHHR failed to timely schedule family therapy and sign language classes. However, these assertions have no merit and we do not find petitioner's arguments persuasive.

Pursuant to West Virginia Code § 49-4-610(4)(A), parents "shall be responsible for the initiation and completion of all terms of the improvement period." According to the record, following her stipulated adjudication in June of 2017, petitioner was provided with adult life skills services, budgeting services, food vouchers, and assistance in obtaining employment. It is unclear from the record to what extent petitioner participated in those services. However, petitioner was later granted a post-adjudicatory improvement period in May of 2018 and the DHHR was ordered to arrange family therapy services. According to the record, the DHHR scheduled the intake for therapy in June of 2018, and the parents subsequently attended therapy sessions. Petitioner argues that she "took the initiative to bring the children for family therapy." However, the record shows that petitioner failed to schedule additional sessions until a subsequent MDT meeting. Petitioner was "responsible for the initiation and completion" of the sign language and family therapy services. *Id.* Moreover, in May of 2018, the circuit court specifically found that the DHHR was making "reasonable efforts" to reunify the family as required by West Virginia Code § 49-4-604(b)(7). Therefore, because the DHHR provided services as ordered by the circuit court and because petitioner was responsible for the initiation and completion of those services, we find no merit to petitioner's argument that the DHHR was "intentionally withholding services."

Petitioner also contends that the DHHR presented conflicting testimony, demonstrating that the DHHR was biased against her. While it is true that service workers presented conflicting testimony regarding her participation in sign language classes and whether there were safety concerns for the children, the circuit court ultimately found that there were no safety concerns for the children after the therapy sessions. The sign language classes were provided at petitioner's

4

request due to the father's deafness and hearing impairments of some of the children. Whether petitioner participated in sign language classes was inconsequential in the circuit court's decision to terminate petitioner's parental rights, as discussed further below. Although petitioner alleges that the DHHR "intentionally withheld services" and was biased against her, she minimizes her failure to correct the conditions of abuse and neglect during the proceedings. At the time of the dispositional hearing, petitioner was unable to provide a home for her nine children and failed to acknowledge the abuse the led to filing the abuse and neglect petition.

Petitioner next contends that the DHHR "refused to offer financial assistance to avoid [her] eviction." However, the record shows that in March of 2018, petitioner testified that her bills and rent were "paid and caught up." Although she also contends that her counsel requested financial assistance on her behalf, the record shows that she failed to inform the DHHR that she was in need of financial assistance to avoid eviction. Petitioner's landlords testified that the parents failed to pay their rent at least nine out of the seventeen months that the abuse and neglect proceedings were pending and owed over $2,000 in overdue rent. The circuit court found that due to petitioner's dishonesty regarding the parents' eviction, the DHHR was unaware that they needed financial assistance. Thus, petitioner's argument that the DHHR failed to provide financial assistance is without merit.

Petitioner further contends that the circuit court erred in denying her motion to extend her post-adjudicatory improvement period. In support, petitioner argues that "therapy was helping and that she believed that continued therapy would help her with parenting." She also alleges that she was "genuinely participating in what little services the [DHHR] arranged for her." We do not find this argument persuasive.

While petitioner argues that she was entitled to a "full six months of post[-]adjudicatory improvement period with a genuine effort from the [DHHR] to provide services," West Virginia Code § 49-4-610(6) provides that a parent may be granted an extension of his or her improvement period not to exceed three months when the circuit court "finds that the [parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the [DHHR] to permanently place the child[ren]; and that the extension is otherwise consistent with the best interest of the child[ren]." Moreover, West Virginia Code § 49-4-610(7) provides that the circuit court shall terminate any improvement period "when the court finds that respondent has failed to fully participate in the terms of the improvement period."

Here, the record shows that petitioner participated in some services during her post-adjudicatory improvement period. However, the circuit court found that petitioner failed to substantially comply with the improvement period due to her inability to maintain a suitable home for the children during the proceedings. Further, due to her dishonesty, particularly about her failure to pay rent which led to her homelessness, it is clear that granting petitioner an extension of her post-adjudicatory improvement period was not in the children's best interests. In this case, the termination of petitioner's post-adjudicatory improvement period as well as her parental rights was necessary in order to establish permanency for the children, who had been in foster care for approximately seventeen months by the time the final dispositional hearing was held. For these reasons, the circuit court did not err in denying petitioner's motion for an extension of her post-adjudicatory improvement period, and the termination of the improvement

period was appropriate due to petitioner's failure to fully participate in the terms and conditions of the same.

Finally, we find no error in the circuit court's termination of petitioner's parental rights. During the dispositional hearing, the circuit court found that, despite her admissions at the adjudicatory hearing regarding W.M.'s injuries that led to the filing of the petition, petitioner's explanations regarding how W.M. was injured were subsequently inconsistent throughout the proceedings. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The circuit court noted that petitioner's failure to take responsibility for the injuries to W.M. prevented her from "making actual improvement in the conditions that led to the filing of the abuse and neglect [p]etitions." The circuit court also expressed that it was "utterly astonished that seventeen months after this case began and over a year after . . . [the p]arents made admissions to the [c]ourt that . . . [the p]arents are being untruthful about how their child W.M. was injured." Because petitioner failed to acknowledge the conditions of abuse and neglect, those problems could not be remedied.

Moreover, the DHHR moved for the termination of petitioner's parental rights pursuant to West Virginia Code § 49-4-605(a)(1) which provides that the DHHR shall file such motion "[i]f a child has been in foster care for fifteen of the most recent twenty-two months." Further, West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[ren].

The evidence discussed above also supports the termination of petitioner's parental rights. Petitioner was repeatedly dishonest with the DHHR, the circuit court, and the service providers. She also failed to substantially comply with her post-adjudicatory improvement period or benefit from services, which demonstrated that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect. Moreover, the children remained in foster care for the duration of the proceedings and because petitioner remained homeless when

the final dispositional hearing was held, it is clear that the termination of her parental rights was in the children's best interests in order for the children to be placed into permanent adoptive homes. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 2, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  April 19, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison